# Exhibit 11



| | U.S. Department of Justice | AWARD CONTINUATION | |
|---|---|---|---|
| | Office of Justice Programs | SHEET | PAGE 11 OF 13 |
| | Bureau of Justice Assistance | Grant | |

| PROJECT NUMBER | 2016-DJ-BX-0453 | AWARD DATE | 09/06/2016 |
|---|---|---|---|

## SPECIAL CONDITIONS

38. Ballistic-resistant and stab-resistant body armor purchased with JAG funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the vests have been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and are listed on the NIJ Compliant Body Armor Model List (https://nij.gov). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: http://www.nij.gov/topics/technology/body-armor/safety-initiative.htm.

39. The recipient agrees to submit a signed certification that all law enforcement agencies receiving vests purchased with JAG funds have a written "mandatory wear" policy in effect. Fiscal agents and state agencies must keep signed certifications on file for any subrecipients planning to utilize JAG funds for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any JAG funding can be used by the agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

40. The recipient agrees to monitor subawards under this JAG award in accordance with all applicable statutes, regulations, OMB circulars, and guidelines, including the DOJ Financial Guide, and to include the applicable conditions of this award in any subaward. The recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of JAG funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

41. The recipient agrees that funds received under this award will not be used to supplant State or local funds, but will be used to increase the amounts of such funds that would, in the absence of Federal funds, be made available for law enforcement activities.

42. Award recipients must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA). P.L. 103-62, applicants who receive funding under this solicitation must provide data that measure the results of their work. Therefore, quarterly performance metrics reports must be submitted through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

43. Any law enforcement agency receiving direct or sub-awarded JAG funding must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.

44. BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to your My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If you do not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once you register, one of the available areas on your My BJA page will be "My Success Stories". Within this box, you will see an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the new BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

45. Recipient understands and agrees that award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf



AR-00453



U.S. Department of Justice
Office of Justice Programs
Bureau of Justice Assistance

AWARD CONTINUATION
SHEET
Grant

PAGE 12 OF 13

PROJECT NUMBER   2016 DJ-BX-0878     AWARD DATE   09/06/2016

### SPECIAL CONDITIONS

46.  The recipient understands that, pursuant to recommendation 2.1 of Executive Order 13688, law enforcement agencies that acquire controlled equipment through Federal programs must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards.  General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations.  Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient agrees to provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

47.  Recipient understands and agrees that the purchase or acquisition of any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, with award funds by an agency will trigger a requirement that the agency collect and retain (for at least 3 years) certain information about the use of 1) any federally-acquired Controlled Equipment in the agency's inventory, and 2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and make that information available to BJA upon request.  Details about what information must be collected and retained may be accessed here: https://www.whitehouse.gov-sites/default/files/docs/le_equipment_wg_final_report_final.pdf

48.  Recipient understands and agrees that failure to comply with conditions related to Prohibited or Controlled Expenditures may result in a prohibition from further Controlled Expenditure approval under this or other federal awards.

49.  Recipient understands and agrees that award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure list may be accessed here: https://www.bja.gov funding/JAGControlledPurchaseList.pdf.

50.  Recipient understands and agrees that, notwithstanding 2 CFR § 200.313, no equipment listed on the Controlled Expenditure List that is purchased under this award may be transferred or sold to a third party, except as described below:

a. Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it was requesting approval to use award fund for the initial purchase of items on the Controlled Expenditure List.
b. Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.
c. Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

Recipient further understands and agrees to notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased under this award, and to abide by any applicable laws and regulations in such disposal.



OJP FORM 4000/2 (REV. 4-88)



U.S Department of Justice
Office of Justice Programs
Bureau of Justice Assistance

AWARD CONTINUATION
SHEET
Grant

PAGE 13 OF 13

PROJECT NUMBER   2016 DJ-BX-0178        AWARD DATE   09/06/2016

## SPECIAL CONDITIONS

51.  Recipient integrity and performance matters:  Requirement to report information on certain civil, criminal, and administrative proceedings to SAM and FAPIIS

The recipient must comply with any and all applicable requirements regarding reporting of information on civil, criminal, and administrative proceedings connected with (or connected to the performance of) either this OJP award or any other grant, cooperative agreement, or procurement contract from the federal government.  Under certain circumstances, recipients of OJP awards are required to report information about such proceedings, through the federal System for Award Management (known as "SAM"), to the designated federal integrity and performance system (currently, "FAPIIS").

The details of recipient obligations regarding the required reporting (and updating) of information on certain civil, criminal, and administrative proceedings to the federal designated integrity and performance system (currently, "FAPIIS") within SAM are posted on the OJP web site at http://ojp.gov/funding/FAPIIS.htm (Award condition: Recipient Integrity and Performance Matters, including Recipient Reporting to FAPIIS), and are incorporated by reference here.

52.  The recipient may not obligate, expend, or draw down any award funds until: (1) it has provided to the grant manager for this OJP award information regarding research and evaluation independence and integrity in accordance with the detailed instructions in the program solicitation, (2) OJP has completed its review of the information provided and of any supplemental information it may request, (3) the recipient has made (or agreed to) any adjustments to the award (including as to amount) that OJP may require or request, to prevent, eliminate, mitigate, or otherwise adequately address any actual or apparent personal or financial conflict of interest on the part of the investigators or other staff consultants engaged in the research/evaluation or organizational conflict of interest on the part of the recipient entity, and (4) a Grant Adjustment Notice has been issued removing this special condition.

The recipient understands and agrees that if it does not provide an adequate research and evaluation independence and integrity submission (as determined by OJP), or if it fails to implement (as determined by OJP) any safeguard included in its submission or required by OJP, a discretionary award will be terminated (without right of appeal), upon thirty (30) calendar days advance written notice by OJP.

53.  Submission of compliance validation:
The recipient agrees to undertake a review to validate its compliance with 8 U.S.C § 1373. If the recipient determines that it is in compliance with 8 U.S.C § 1373 at the time of review, then it must submit documentation that contains a validation to that effect and includes an official legal opinion from counsel (including related legal analysis) adequately supporting the validation. If the recipient determines that it is not in compliance with 8 U.S.C. § 1373 at the time of review, then it must take sufficient and effective steps to bring it into compliance therewith and thereafter submit documentation that details the steps taken, contains a validation that the recipient has come into compliance, and includes an official legal opinion from counsel (including related legal analysis) adequately supporting the validation. Documentation must be submitted via GMS to BJA by June 30, 2017. Failure to comply with this condition could result in the withholding of grant funds, suspension or termination of the grant, ineligibility for future OJP grants or subgrants, or other administrative, civil, or criminal penalties, as appropriate.



OJP FORM 4000/2 (REV  4-88)

AR-00455


U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

*Washington, D.C. 20531*

Memorandum To:  Official Grant File

From:          Orbin Terry, NEPA Coordinator

Subject:       Incorporates NEPA Compliance in Further Developmental Stages for New York City
               Mayor's Office of Criminal Justice

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and local governments to support a broad range of activities to prevent and control crime and to improve the criminal justice system, some of which could have environmental impacts. All recipients of JAG funding must assist BJA in complying with NEPA and other related federal environmental impact analyses requirements in the use of grant funds, whether the funds are used directly by the grantee or by a subgrantee or third party. Accordingly, prior to obligating funds for any of the specified activities, the grantee must first determine if any of the specified activities will be funded by the grant.

The specified activities requiring environmental analysis are:
a. New construction;
b. Any renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

Complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. Further, for programs relating to methamphetamine laboratory operations, the preparation of a detailed Mitigation Plan will be required. For more information about Mitigation Plan requirements, please see https://www.bja.gov/Funding/nepa.html.

Please be sure to carefully review the grant conditions on your award document, as it may contain more specific information about environmental compliance.

AR-00456



U.S. Department of Justice
Office of Justice Programs
Bureau of Justice Assistance

## GRANT MANAGER'S MEMORANDUM, PT. I:
PROJECT SUMMARY

Grant

| PROJECT NUMBER | |
|---|---|
| 2016-DJ-BX-0178 | PAGE 1 OF 1 |

This project is supported under FY16(BJA - JAG) 42 USC 3750, et seq

| 1 STAFF CONTACT (Name & telephone number) | 2 PROJECT DIRECTOR (Name, address & telephone number) |
|---|---|
| Ania Dobrzanska<br>(202) 598-7476 | Saira Khan<br>Budget Analyst<br>1 Centre Street, 10th Floor<br>New York, NY 10007-1602<br>(646) 576-3508 |

| 3a. TITLE OF THE PROGRAM | 3b FOMS CODE (SEE INSTRUCTIONS ON REVERSE) |
|---|---|
| 2016 Edward Byrne Memorial Justice Assistance Grant Program | |

4. TITLE OF PROJECT

New York City 2016 Justice Assistance Grant

| 5. NAME & ADDRESS OF GRANTEE | 6. NAME & ADRESS OF SUBGRANTEE |
|---|---|
| New York City Mayor's Office of Criminal Justice<br>1 Centre Street, Room 1012<br>New York, NY 10007-1602 | |

| 7. PROGRAM PERIOD | 8. BUDGET PERIOD |
|---|---|
| FROM     10/01/2015     TO:  09/30/2019 | FROM     10/01/2015     TO:  09/30/2019 |

| 9 AMOUNT OF AWARD | 10. DATE OF AWARD |
|---|---|
| $ 4,298,245 | 09/06/2016 |

| 11 SECOND YEAR'S BUDGET | 12. SECOND YEAR'S BUDGET AMOUNT |
|---|---|
| | |

| 13 THIRD YEAR'S BUDGET PERIOD | 14 THIRD YEAR'S BUDGET AMOUNT |
|---|---|
| | |

15. SUMMARY DESCRIPTION OF PROJECT (See instruction on reverse)

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and units of local government, including tribes, to support a broad range of activities to prevent and control crime based on their own state and local needs and conditions. Grant funds can be used for state and local initiatives, technical assistance, training, personnel, equipment, supplies, contractual support, and information systems for criminal justice, including for any one or more of the following program areas: 1) law enforcement programs, 2) prosecution and court programs, 3) prevention and education programs; 4) corrections and community corrections programs; 5) drug treatment and enforcement programs; 6) planning, evaluation and technology improvement programs; and 7) crime victim and witness programs (other than compensation).

The grantee will use the JAG award to support a range of program areas including: law enforcement, crime prevention, technology improvement; mental health services, prosecution and courts; reentry; and drug enforcement. Collectively, these strategies will increase public safety and promote fairness in the criminal justice

OJP FORM 4000/2 (REV. 4-88)

system. NCA/NCF

AR-00458



U.S. Department of Justice

Office of Justice Programs

Bureau of Justice Assistance

Office of Justice Programs

Washington, D.C. 20531

September 6, 2016

Ms. Elizabeth Glazer
New York City Mayor's Office of Criminal Justice
1 Centre Street, Room 1012
New York, NY 10007-1602

Dear Ms. Glazer:

On behalf of Attorney General Loretta Lynch, it is my pleasure to inform you that the Office of Justice Programs has approved your application for funding under the FY 16 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation in the amount of $4,298,245 for New York City Mayor's Office of Criminal Justice.

Enclosed you will find the Grant Award and Special Conditions documents. This award is subject to all administrative and financial requirements, including the timely submission of all financial and programmatic reports, resolution of all interim audit findings, and the maintenance of a minimum level of cash-on-hand. Should you not adhere to these requirements, you will be in violation of the terms of this agreement and the award will be subject to termination for cause or other administrative action as appropriate.

If you have questions regarding this award, please contact:

- Program Questions, Ania Dobrzanska, Program Manager at (202) 598-7426; and

- Financial Questions, the Office of the Chief Financial Officer, Customer Service Center (CSC) at (800) 458-0786, or you may contact the CSC at ask.ocfo@usdoj.gov.

Congratulations, and we look forward to working with you.

Sincerely,

Denise O'Donnell
Director

Enclosures



OFFICE FOR CIVIL RIGHTS

Office of Justice Programs

U.S. Department of Justice
810 7th Street, NW
Washington, DC 20531

Tel: (202) 307-0690
TTY: (202) 307-2027
E-mail: askOCR@usdoj.gov
Website: www.ojp.usdoj.gov/ocr

September 6, 2016

Ms. Elizabeth Glazer
New York City Mayor's Office of Criminal Justice
1 Centre Street, Room 1012
New York, NY 10007-1602

Dear Ms. Glazer:

Congratulations on your recent award. In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights laws. The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) is responsible for ensuring that recipients of financial assistance from the OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW) comply with the applicable federal civil rights laws. We at the OCR are available to help you and your organization meet the civil rights requirements that come with DOJ funding.

Ensuring Access to Federally Assisted Programs

Federal laws that apply to recipients of financial assistance from the DOJ prohibit discrimination on the basis of race, color, national origin, religion, sex, or disability in funded programs or activities, not only in employment but also in the delivery of services or benefits. A federal law also prohibits recipients from discriminating on the basis of age in the delivery of services or benefits.

In March of 2013, President Obama signed the Violence Against Women Reauthorization Act of 2013. The statute amends the Violence Against Women Act of 1994 (VAWA) by including a nondiscrimination grant condition that prohibits discrimination based on actual or perceived race, color, national origin, religion, sex, disability, sexual orientation, or gender identity. The new nondiscrimination grant condition applies to certain programs funded after October 1, 2013. The OCR and the OVW have developed answers to some frequently asked questions about this provision to assist recipients of VAWA funds to understand their obligations. The Frequently Asked Questions are available at http://ojp.gov/about/ocr/vawafaqs.htm.

Enforcing Civil Rights Laws

All recipients of federal financial assistance, regardless of the particular funding source, the amount of the grant award, or the number of employees in the workforce, are subject to prohibitions against unlawful discrimination. Accordingly, the OCR investigates recipients that are the subject of discrimination complaints from both individuals and groups. In addition, based on regulatory criteria, the OCR selects a number of recipients each year for compliance reviews, audits that require recipients to submit data showing that they are providing services equitably to all segments of their service population and that their employment practices meet equal opportunity standards.

Providing Services to Limited English Proficiency (LEP) Individuals

In accordance with DOJ guidance pertaining to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, recipients of federal financial assistance must take reasonable steps to provide meaningful access to their programs and activities for persons with limited English proficiency (LEP). See U.S. Department of Justice, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41,455 (2002). For more information on the civil rights responsibilities that recipients have in providing language services to LEP individuals, please see the website http://www.lep.gov.

Ensuring Equal Treatment for Faith-Based Organizations

The DOJ regulation, Equal Treatment for Faith-Based Organizations, 28 C.F.R. pt. 38, requires State Administering Agencies (SAAs) to treat faith-based organizations the same as any other applicant or recipient. The regulation prohibits SAAs from making awards or grant administration decisions on the basis of an organization's religious character or affiliation, religious name, or the religious composition of its board of directors.

The regulation also prohibits faith-based organizations from using financial assistance from the DOJ to fund inherently (or explicitly) religious activities. While faith-based organizations can engage in non-funded inherently religious activities, they must hold them separately from the program funded by the DOJ, and recipients cannot compel beneficiaries to participate in them. The Equal Treatment Regulation also makes clear that organizations participating in programs funded by the DOJ are not permitted to discriminate in the provision of services on the basis of a beneficiary's religion. For more information on the regulation, please see the OCR's website at http://www.ojp.usdoj.gov/about/ocr/equal_fbo.htm.

SAAs and faith-based organizations should also note that the Omnibus Crime Control and Safe Streets Act (Safe Streets Act) of 1968, as amended, 42 U.S.C. § 3789d(c); the Victims of Crime Act of 1984, as amended, 42 U.S.C. § 10604(e), the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, 42 U.S.C. § 5672(b); and VAWA, Pub. L. No. 113-4, sec. 3(b)(4), 127 Stat. 54, 61-62 (to be codified at 42 U.S.C. § 13925(b)(13)) contain prohibitions against discrimination on the basis of religion in employment. Despite these nondiscrimination provisions, the DOJ has concluded that it may construe the Religious Freedom Restoration Act (RFRA) on a case-by-case basis to permit some faith-based organizations to receive DOJ funds while taking into account religion when hiring staff, even if the statute that authorizes the funding program generally forbids recipients from considering religion in employment decisions. Please consult with the OCR if you have any questions about the regulation or the application of RFRA to the statutes that prohibit discrimination in employment.

Using Arrest and Conviction Records in Making Employment Decisions

The OCR issued an advisory document for recipients on the proper use of arrest and conviction records in making hiring decisions. See Advisory for Recipients of Financial Assistance from the U.S. Department of Justice on the U.S. Equal Employment Opportunity Commission's Enforcement Guidance: Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964 (June 2013), available at http://www.ojp.usdoj.gov/about/ocr/pdfs/UseofConviction_Advisory.pdf. Recipients should be mindful that the misuse of arrest or conviction records to screen either applicants for employment or employees for retention or promotion may have a disparate impact based on race or national origin, resulting in unlawful employment discrimination. In light of the Advisory, recipients should consult local counsel in reviewing their employment practices. If warranted, recipients should also incorporate an analysis of the use of arrest and conviction records in their Equal Employment Opportunity Plans (EEOPs) (see below).

Complying with the Safe Streets Act

An organization that is a recipient of financial assistance subject to the nondiscrimination provisions of the Safe Streets Act, must meet two obligations: (1) complying with the federal regulation pertaining to the development of an EEOP (see 28 C.F.R. pt. 42, subpt. E) and (2) submitting to the OCR findings of discrimination (see 28 C.F.R. §§ 42.204(c), .205(c)(5)).

Meeting the EEOP Requirement

If your organization has less than fifty employees or receives an award of less than $25,000 or is a nonprofit organization, a medical institution, an educational institution, or an Indian tribe, then it is exempt from the EEOP requirement. To claim the exemption, your organization must complete and submit Section A of the Certification Form, which is available online at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

If your organization is a government agency or private business and receives an award of $25,000 or more, but less than $500,000, and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report (formerly called an EEOP Short Form), but it does not have to submit the report to the OCR for review. Instead, your organization has to maintain the Utilization Report on file and make it available for review on request. In addition, your organization has to complete Section B of the Certification Form and return it to the OCR. The Certification Form is available at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

If your organization is a government agency or private business and has received an award for $500,000 or more and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report (formerly called an EEOP Short Form) and submit it to the OCR for review within sixty days from the date of this letter. For assistance in developing a Utilization Report, please consult the OCR's website at http://www.ojp.usdoj.gov/about/ocr/eeop.htm. In addition, your organization has to complete Section C of the Certification Form and return it to the OCR. The Certification Form is available at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

To comply with the EEOP requirements, you may request technical assistance from an EEOP specialist at the OCR by telephone at (202) 307-0690, by TTY at (202) 307-2027, or by e-mail at EEOsubmisson@usdoj.gov.

Meeting the Requirement to Submit Findings of Discrimination

If in the three years prior to the date of the grant award, your organization has received an adverse finding of discrimination based on race, color, national origin, religion, or sex, after a due-process hearing, from a state or federal court or from a state or federal administrative agency, your organization must send a copy of the finding to the OCR.

Ensuring the Compliance of Subrecipients

SAAs must have standard assurances to notify subrecipients of their civil rights obligations, written procedures to address discrimination complaints filed against subrecipients, methods to monitor subrecipients' compliance with civil rights requirements, and a program to train subrecipients on applicable civil rights laws. In addition, SAAs must submit to the OCR every three years written Methods of Administration (MOA) that summarize the policies and procedures that they have implemented to ensure the civil rights compliance of subrecipients. For more information on the MOA requirement, see http://www.ojp.usdoj.gov/funding/other_requirements.htm.

If the OCR can assist you in any way in fulfilling your organization's civil rights responsibilities as a recipient of federal financial assistance, please contact us.

Sincerely,

Michael L. Alston
Director

cc: Grant Manager
    Financial Analyst

**Maith-Powers, Royace**

| From: | Khan, Saira <SKhan@cityhall.nyc.gov> |
|---|---|
| Sent: | Monday, October 17, 2016 1:46 PM |
| To: | Acceptance, Acceptance |
| Cc: | Crohn, Alexander; Grumet, Deborah; Dobrzanska, Ania |
| Subject: | FW: GMS Award 2016-DJ-BX-0178 |
| Attachments: | JAG 16 Acceptance MOCJ.pdf |

To Whom it May Concern,

I am writing to accept the FY 16 JAG Award 2016-DJ-BX-0178 on behalf of the NYC Mayor's Office of Criminal Justice. The signed award document has been attached. Please contact me with any questions or concerns.

Thank you,

Saira Khan
Mayor's Office of Criminal Justice
One Centre Street, Room 1012N
New York, NY 10007
T: (646) 576-3508
C: (917) 900-7695

-----Original Message-----
From: donot-reply@ojp.usdoj.gov [mailto:donot-reply@ojp.usdoj.gov]
Sent: Tuesday, September 06, 2016 9:44 PM
To: Glazer, Elizabeth; Khan, Saira
Subject: GMS Award 2016-DJ-BX-0178

Congratulations. You have been awarded a grant by the Office of Justice Programs at the U.S. Department of Justice. Accepting your award is a two step process.

The first step is to designate a Financial Point of Contact (FPOC) for your award. To designate a FPOC please follow these steps:

    1. Log into GMS.
    2. Click the "Awards" link on the navigation bar on the left hand side.
    3. Click the "View Award instructions" link to the right of the award you want to accept.
    4. A new page displays with this message near the top: "The FPOC designation must be submitted before the Award Package can be accessed." The page contains text boxes highlighted in light yellow to capture the FPOC registration information.
        a. If information for the FPOC of this award already exists in GMS, the first table entry will contain a box with the text "Available Financial Points of Contact." There is a box with a dropdown arrow to allow the selection of the FPOC. Select the name and click the "Load POC" box. GMS will populate the data

1

documents, designating a Financial Point of Contact, or creating a Grant Adjustment, please contact the GMS Help Desk at 1-888-549-9901 option #3 or email them at gms.helpdesk@usdoj.gov.

Web link to GMS: https://grants.ojp.usdoj.gov

Please follow these links to access important OJP instructions:

Creating a financial point of contact instructions:
http://www.ojp.usdoj.gov/funding/pdfs/fsr_user_manual.pdf

Post Award Instructions: http://www.ojp.usdoj.gov/funding/pdfs/post_award_instructions.pdf

OJP Financial Guide: http://www.ojp.usdoj.gov/financialguide/

Please do not reply to this message. You can contact your program manager Ania Dobrzanska at (202) 598-7476.

3

AR-00464

Case 1:18-cv-06474-WFR Document 33-11 Filed 08/27/18 Page 465 of 33
Case 1:18-cv-06471-WFK Document 96-11 Filed 08/23/18 Page 465 of 508

Award Information                                                      Page 1 of 1

 **U.S. Department of Justice**
**Office of Justice Programs**


Welcome, Jasmine Fontaine
**Role:** OJP OCCD - Administrator ▾

Home    Process    Reports    Search    Options

Home > Redbook Inbox > Award Search Results > Application Information:2016-H4375-
NY-DJ > **Award Information**

| | |
|---|---|
| **Redbook** | |

**Application Number: 2016-H4375-NY-DJ**

**Award Number: 2016-DJ-BX-0178**

| **Redbook** | |
|---|---|
| Back to Search Results | |
| Application Information | |
| Assurances and Certifications | |
| Print SF-424 | |
| Correspondence | |
| Notes | |
| Program | |
| Funding | |
| Audit Trail | |
| **Award Information** | |
| Progress Report Dates | |
| Grant Documentation | |

### Award Information
#### Municipality

**Award Date:** 09/06/2016
**Grantee Notification Date:** 09 ▾ 6 ▾ 2016 ▾
**Notification Status:** Normal
**Grantee Response:** Accepted ▾
**Grantee Response Date:** 10 ▾ 18 ▾ 2016 ▾
**Financial Point of Contact:** Khan, Saira
**Organization:** New York City (or New York City Office of the Criminal Justice Coordinator)
One Centre Street
Room 1012N
New York
NY
10007
1604

AR-004465



## Karen K. Buffkin

GENERAL COUNSEL
OFFICE OF THE GOVERNOR
STATE OF CONNECTICUT

VIA ELECTRONIC MAIL

January 20, 2017

Tracey Trautman
Deputy Director
Bureau of Justice Assistance
United States Department of Justice

RE:     Department of Justice Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant
        Recipients Dated September 23, 2106 (as corrected).

Dear Deputy Director Trautman:

The Department of Justice has required a grant recipient, in this case the State of Connecticut, to
provide a legal opinion that such recipient is in compliance with the requirements of federal statute 8
U.S.C. § 1373, more particularly subsections (a) and (b) of such act. Connecticut law complies with the
requirements of subsections (a) and (b) of Section 1373 as it does not prohibit or in any way restrict
state or local authorities from sending to, receiving, exchanging or maintaining information from the
Immigration and Naturalization Service (INS) about the immigration status of an individual. In fact,
Connecticut's statute affirmatively requires notification to INS when a civil immigration detainer has
been requested.

This opinion is in response to guidance from Department of Justice that the grant recipient is required to
provide compliance validation, including a legal opinion with supporting analysis of such compliance.
Such guidance is provided in response to a memorandum of the Office of the Inspector General, dated
September 23, 2016 titled, *Department of Justice Referral of Allegations of Potential Violations of 8
U.S.C. § 1373 by Grant Recipients*. This opinion letter serves as the requisite compliance validation.

Section 8 U.S.C. § 1373 specifically provides in subsection (a) that,

> ...a Federal, State, or local government entity or official may not prohibit, or in any way
> restrict, any government entity or official from sending to, or receiving from, the
> Immigration and Naturalization Service information regarding the citizenship or
> immigration status, lawful or unlawful, of any individual.

Further, subsection (b) provides:

> Notwithstanding any other provision of Federal, State, or local law, no person or agency
> may prohibit, or in any way restrict, a Federal, State, or local government entity from

1

AR-00466

doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

(1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.

(2) Maintaining such information.

(3) Exchanging such information with any other Federal, State, or local government entity.

The memorandum prepared by the Office of the Inspector General contains a citation to the legislative history of Section 1373. It states that Section 1373 was intended "to give State and local official the authority to communicate with the Immigration and Naturalization Service (INS) ...[and was] designed to prevent any State or local law, ordinance, executive order, policy, ... that prohibits or in any way restricts communication between State and local officials and the INS." (Memorandum at p. 3, internal citations omitted)

Connecticut law complies with 8 USC § 1373 because it both specifically authorizes state and local law enforcement to communicate with INS and does not "prohibit or in any way restrict" the sending or receiving of information from INS regarding the immigration status of an individual. In 2013, the Connecticut Legislature adopted public act 13-155, codified as Section 54-192h of the Connecticut General Statutes, in order to establish required procedures for state and local law enforcement officers when presented with a civil immigration detainer for a person in custody. Prior to the adoption of this act Connecticut did not have a uniform policy for its state and local law enforcement on the handling of such matters.

Section 54-192h of the Connecticut general statutes provides,

(a)  For the purposes of this section:

(1)  "Civil immigration detainer" means a detainer request issued pursuant to 8 CFR 287.7;

(2)  "Convicted of a felony" means that a person has been convicted of a felony, as defined in section 53a-25, pursuant to a final judgment of guilt entered by a court in this state or in a court of competent jurisdiction within the United States upon a plea of guilty, a plea of nolo contendere or a finding of guilty by a jury or the court notwithstanding any pending appeal or habeas corpus proceeding arising from such judgment;

(3)  "Federal immigration authority" means any officer, employee or other person otherwise paid by or acting as an agent of United States Immigration and Customs Enforcement or any division thereof or any officer, employee or other person otherwise paid by or acting as an agent of the United States Department of Homeland Security who is charged with enforcement of the civil provisions of the Immigration and Nationality Act; and

(4)  "Law enforcement officer" means:

2

(A) Each officer, employee or other person otherwise paid by or acting as an agent of the Department of Correction;

(B) Each officer, employee or other person otherwise paid by or acting as an agent of a municipal police department;

(C) Each officer, employee or other person otherwise paid by or acting as an agent of the Division of State Police within the Department of Emergency Services and Public Protection; and

(D) Each judicial marshal and state marshal.

(b)    No law enforcement officer who receives a civil immigration detainer with respect to an individual who is in the custody of the law enforcement officer shall detain such individual pursuant to such civil immigration detainer unless the law enforcement official determines that the individual:

(1) Has been convicted of a felony;

(2) Is subject to pending criminal charges in this state where bond has not been posted;

(3) Has an outstanding arrest warrant in this state;

(4) Is identified as a known gang member in the database of the National Crime Information Center or any similar database or is designated as a Security Risk Group member or a Security Risk Group Safety Threat member by the Department of Correction;

(5) Is identified as a possible match in the federal Terrorist Screening Database or similar database;

(6) Is subject to a final order of deportation or removal issued by a federal immigration authority; or

(7) Presents an unacceptable risk to public safety, as determined by the law enforcement officer.

(c)    Upon determination by the law enforcement officer that such individual is to be detained or released, the law enforcement officer shall immediately notify United States Immigration and Customs Enforcement. If the individual is to be detained, the law enforcement officer shall inform United States Immigration and Customs Enforcement that the individual will be held for a maximum of forty-eight hours, excluding Saturdays, Sundays and federal holidays. If United States Immigration and Customs Enforcement fails to take custody of the individual within such forty-eight-hour period, the law enforcement officer shall release the individual. In no event shall an individual be detained for longer than such forty-eight-hour period solely on the basis of a civil immigration detainer.

Subsection (c) of Section 54-192h clearly requires a law enforcement officer, upon determining whether or to detain or release an individual, to *immediately notify* the United States Immigration and Customs Enforcement (ICE). *54-192h(c)*. The notification is required regardless of whether the individual is to be detained or released. The provisions of this subsection not only specifically authorize communication with INS; it requires it. Further, the statute complies with Section 1373 because there is no provision of Connecticut's statute that in any manner prohibits or restricts sending or receiving information from ICE regarding the immigration status of an individual. The obligations of the statute are unambiguous.

3

AR-00468

It is also important to note that in accordance with Connecticut law where "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extra textual evidence of the meaning of the statute shall not be considered." Section 1-2z, Connecticut General Statutes.  In this particular instance the intent of the statute is clear law enforcement officers are required to communicate with ICE.  In such circumstances a review of the legislative history would not be warranted; however, in this instance the legislative history sheds important light on the purpose behind the act and the intent of the Legislature in its adoption.  The following excerpt from the transcript of the debate is illustrative of both the purpose and operation of public act 13-155:

REP. REBIMBAS (70th):
Thank you, Mr. Speaker.
And just to further clarify, *this amendment requires that a police department contact ICE if there's any type of civil immigration detainers*, whether or not the police department decides to release or detain an individual. Is that correct?
Through you, Mr. Speaker.

SPEAKER SHARKEY:
Representative Holder-Winfield.

REP. HOLDER-WINFIELD (94th):
Yes. Through you, Mr. Speaker.
Upon detention of one of these individuals, that would be correct.
Through you, Mr. Speaker.

SPEAKER SHARKEY:
Representative Rebimbas.
REP. REBIMBAS (70th):
Thank you, Mr. Speaker.
And I think that's one of the most important parts of this amendment. Where the underlying bill was preventing a police department from making any notification to the appropriate department, ICE in this particular occasion. *When it comes to civil immigration detainers, what the amendment actually does is encourages that and mandates that they do contact ICE, so that they are properly notified when there is an individual that has a civil immigration detainer.* At that moment in time, they will then be able to inform the department of what type of action that they may or may not take.
They may, at that time, indicate to the department that they have no interest in the person and then, if the department, under the factors that have been enumerated in this amendment, if there's no pending charges or investigations and things of that nature, everything that's enumerated here, then the police department, after 48 hours, would then release the person.
But certainly, and again, for clarification purposes, if the factors in this amendment is found and the police department, then does have the ability to detain the individual past 48 hours. Is that correct?
Through you, Mr. Speaker.

AR-00469

SPEAKER SHARKEY:
Representative Holder-Winfield.

REP. HOLDER-WINFIELD (94th):
Through you, Mr. Speaker.
That would be correct.

...

REP. REBIMBAS (70th):
Thank you, Mr. Speaker.
Mr. Speaker, as I indicated earlier, I do rise in support of this amendment. I think, again, we were void of having any type of guidelines. Without this amendment, any police department could have taken it upon their individual selves to make the decision of during a stop or if they were arresting someone, if they found out that there was a civil immigration detainers, that police department had the opportunity to say, well I'm not going to contact ICE. I prefer not to. There's no charges we're going to proceed here in the State of Connecticut. I know there's a civil immigration detainer. I'm going to unilaterally decide I'm not going to contact ICE.
What this amendment actually does, is require that the police department contact ICE. ICE will then, in turn, let the police department know what their intentions are. At that moment in time, they can say we have no intent to follow up on this immigration detainer. Therefore, the police department could release them.
If the police department wanted to detain them, they can only detain them for 48 hours, but again, it has that open line of communication. Because unfortunately, without an amendment like this or a guideline, what we have is some police departments not following up with ICE on these immigration detainers and then others, unfortunately, holding people back, as a result of the civil immigration detainer for days and/or weeks or more, waiting for potentially ICE to come, where, in fact, they may never come.

(Session Transcript, Connecticut House of Representatives, May 22, 2013)(Emphasis added).

The legislative history of Public Act 13-155 makes clear that the intent of the law was to provide uniform guidelines that Connecticut law enforcement officials were required to follow and specifically mandate communication with ICE. The only restrictions in the statute on law enforcement with respect to the handling of civil detainers are not restrictions encompassed by or enumerated in 8 USC § 1373.

The Office of the Inspector General's original memorandum dated May 31, 2016 contained an incorrect citation of Connecticut law. It cited to an earlier version of House Bill 6659. House Bill 6659 was amended on the floor of the House of Representatives, an amendment that removed any prohibition on law enforcement communication with ICE. The Inspector General on September 23, 2016 corrected its citation of Connecticut law, but specifically indicated that despite the removal of a prohibition on communication by law enforcement its analysis of Connecticut's law had not changed. The Office of Inspector General's analysis appears to result from a misreading of Connecticut's law.

5

The legislative history provided above clearly supports the conclusion that the Inspector General's analysis is incorrect.  As Representative Rebimbas clearly stated in the debate on the bill, "…Where the underlying bill was preventing a police department from making any notification to the appropriate department, ICE in this particular occasion. *When it comes to civil immigration detainers, what the amendment actually does is encourages that and mandates that they do contact ICE, so that they are properly notified when there is an individual that has a civil immigration detainer.*" (*Session Transcript, Connecticut House of Representatives*, May 22, 2013)(Emphasis added).

In conclusion, section 54-192h of the Connecticut General Statutes (Public Act 13-55) specifically requires notification to ICE, nor does it prohibit or in any way restrict sending or receiving information from INS, maintaining such information or exchanging information with federal, state or local law enforcement organizations.  Connecticut law does not contradict or contravene 8 USC § 1373.

I trust this satisfies the compliance validation relative to Connecticut's compliance with applicable federal law.

Sincerely,

Karen K. Buffkin
General Counsel

6

COMMITTEE ON APPROPRIATIONS

CHAIRMAN,
SUBCOMMITTEE ON COMMERCE,
JUSTICE, SCIENCE AND NASA

SUBCOMMITTEE ON
HOMELAND SECURITY

SUBCOMMITTEE ON
TRANSPORTATION, HOUSING
AND URBAN DEVELOPMENT,
AND RELATED AGENCIES

ASSISTANT REPUBLICAN WHIP



**JOHN CULBERSON**
7TH DISTRICT, TEXAS

WASHINGTON OFFICE:
2372 RAYBURN BUILDING
WASHINGTON, DC 20515-4307
202.225.2571
FAX 202.225.4381

DISTRICT OFFICE:
10000 MEMORIAL DRIVE, SUITE 620
HOUSTON, TEXAS 77024-3490
713.682.8828
FAX 713.680.8070

INTERNET:
WWW.CULBERSON.HOUSE.GOV

January 26, 2017

Sally Q. Yates
Acting Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dear Acting Attorney General Yates:

I am writing to make you aware of a recently enacted policy of the Travis County Texas Sheriff's Office that restricts their cooperation with Federal immigration officials. I have attached a copy of this policy, which adds Travis County to the ranks of hundreds of sanctuary jurisdictions nationwide.

I am pleased the Administration recognizes the danger posed by sanctuary jurisdictions, and that the President recently signed an executive order requiring "the Attorney General and the Secretary [of Homeland Security], in their discretion and to the extent consistent with law, [to] ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary jurisdictions) are not eligible to receive Federal grants, except as deemed necessary for law enforcement purposes". The order also requires "The Attorney General [to] take appropriate enforcement action against any entity that violates 8 U.S.C. 1373, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law."

This order is an important step in increasing the safety of our communities and enforcing existing Federal law, and it builds on your prior efforts. Last year, at my urging, the Department required applicants to the State Criminal Alien Assistance Program, the Edward Byrne Memorial Justice Assistance Grant Program, and the Community Oriented Policing Services Program, to certify that the jurisdiction is in compliance with all applicable Federal laws, including 8 U.S.C. 1373.

On its face, the Travis County policy clearly appears to violate 8 U.S.C. 1373. I ask you to review this policy and to determine what actions to take if the policy is a violation. I also ask you to provide me a list of grants for which the county applied.

Sincerely,

John Culberson

John A. Culberson
Chairman
Subcommittee on Commerce, Justice,
Science and Related Agencies

# TRAVIS COUNTY SHERIFF'S OFFICE POLICY ON COOPERATION WITH U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT



## PURPOSE

The purpose of this policy is to promote public safety through continued Travis County Sheriff's Office (TCSO) enforcement of all Texas criminal laws, to protect and serve all residents of Travis County regardless of their immigration status, and to ensure the continued participation of victims and witnesses regardless of their immigration status.

## POLICY:

It is the policy of the TCSO to cooperate with the U.S. Immigration and Customs Enforcement (ICE) in accordance with the following procedures:

1. For purposes of this section, an Immigration and Customs Enforcement "detainer request" (*also known as "ICE holds"*) shall be defined as any request to local law enforcement to: (a) voluntarily notify ICE in advance of releasing the subject of a detainer request, and/or (b) to continue the detention of an inmate beyond expiration of municipal, state, or federal charges, or a finding of no probable cause, or a posting of bail or parole, or a completion of a sentence, or lifting of another jurisdiction or agency's detainer, or a court ordered release. ICE detainer requests include, and are not limited to, DHS forms I-247, I-247D, I-247N, and I-247X. Judicial warrants or any court order for continued detention shall not be considered ICE detainer requests for purposes of this section.

2. TCSO shall comply with ICE detainer requests under the following circumstances: (a) when the detainer request is accompanied by a judicial warrant or court order for continued detention or notification, to the extent required by the judicial warrant or court order; or (b) when the individual who is the subject of the ICE detainer request is charged with or has been convicted of the following felonies under Texas law: (1) Capital Murder, Tex. Penal Code § 19.03; (2) Murder – First Degree, Tex. Penal Code § 19.02; (3) Aggravated Sexual Assault, Tex. Penal Code § 22.021, and (4) Continuous Smuggling of Persons, Tex. Penal Code § 20.06. A conviction consists of a final entry of adjudication of guilt by a court pursuant to statute, and after exhaustion of the appellate process. If a court later (a) vacates the judicial warrant or court order, or (b) the individual's conviction and/or sentence is overturned, TCSO will decline the ICE detainer request relating to that individual.

AR-00473

3. TCSO officials shall not conduct or initiate any immigration status investigation into individuals in TCSO custody or provide information on an inmate's release date or address to ICE.

4. TCSO personnel shall not expend county resources or time communicating with ICE regarding an inmate's release date, incarceration status, or court dates, unless ICE presents a judicial warrant or court order. TCSO personnel shall not use any department resources to assist in the enforcement of federal immigration laws. TCSO personnel shall not request backup or interpretation assistance from ICE or U.S. Customs and Border Protection agents, but in the event of emergency should contact supervisors within TCSO.

5. Absent a judicial warrant or court order, TCSO shall not allow ICE to conduct civil immigration status investigations at the jail or at TCSO offices. Nothing in this policy prevents the TCSO from deciding to cooperate with ICE, as the Sheriff determines on a case-by-case basis, on matters of national security.

6. No TCSO personnel in the jail, on patrol, or elsewhere may inquire about a person's immigration status. A TCSO employee's suspicion about any person's immigration status shall not be used as a basis to initiate contact, question, detain, or arrest that person. TSCO personnel shall not participate in sweeps intended solely to locate and detain undocumented immigrants, whether or not initiated or organized by ICE.

7. Any individual who alleges a violation of the policy set forth herein may file a written complaint for investigation with the Travis County Sheriff's Internal Affairs Division.

8. TCSO is committed to protecting immigrant victims of crime in Travis County through timely administration of requests for T-Visa and U-Visa certifications.

9. TCSO reserves the right to exercise discretion in any individual case to ensure that justice is served.

Sally Hernandez, Sheriff

**February 1, 2017**

Effective Date

AR-00474

**Attorney General Jeff Sessions Delivers Remarks on Sanctuary Jurisdictions**

Washington, DC ~ Monday, March 27, 2017

Good afternoon.  The Department of Justice has a duty to enforce our nation's laws, including our immigration laws.  Those laws require us to promptly remove aliens when they are convicted of certain crimes.

The vast majority of the American people support this common-sense requirement.  According to one recent poll, 80 percent of Americans believe that cities that arrest illegal immigrants for crimes should be required to turn them over to immigration authorities.

Unfortunately, some states and cities have adopted policies designed to frustrate the enforcement of our immigration laws.  This includes refusing to detain known felons under federal detainer requests, or otherwise failing to comply with these laws.  For example, the Department of Homeland Security recently issued a report showing that in a single week, there were more than 200 instances of jurisdictions refusing to honor Immigration and Customs Enforcement (ICE) detainer requests with respect to individuals charged or convicted of a serious crime.  The charges and convictions against these aliens include drug trafficking, hit and run, rape, sex offenses against a child and even murder.

Such policies cannot continue.  They make our nation less safe by putting dangerous criminals back on our streets.

We all remember the tragic case of Kate Steinle, the 32-year-old woman who was shot and killed two years ago in San Francisco as she walked along a pier with her father.  The shooter, Francisco Sanchez, was an illegal immigrant who had already been deported five times and had seven felony convictions.

Just eleven weeks before the shooting, San Francisco had released Sanchez from its custody, even though ICE had filed a detainer requesting that he be kept in custody until immigration authorities could pick him up for removal.  Even worse, Sanchez admitted that the only reason he came to San Francisco was because of its sanctuary policies.

A similar story unfolded just last week, when Ever Valles, an illegal immigrant and Mexican national, was charged with murder and robbery of a man at a light rail station.  Valles was released from a Denver jail in late December, despite the fact that ICE had lodged a detainer for his removal.

The American people are justifiably angry.  They know that when cities and states refuse to help enforce immigration laws, our nation is less safe.  Failure to deport aliens who are convicted for criminal offenses puts whole communities at risk – especially immigrant communities in the very sanctuary jurisdictions that seek to protect the perpetrators.

DUIs, assaults, burglaries, drug crimes, gang crimes, rapes, crimes against children and murders.

AR-00475

Attorney General Jeff Sessions Delivers Remarks on Sanctuary Jurisdictions | OPA | Dep...    Page 2 of 2
Case 3:17-cv-04701-WHO   Document 96-1   Filed 03/23/18   Page 476 of 508
Case 1:18-cv-06471-ER   Document 38-11   Filed 08/27/18   Page 25 of 33

Countless Americans would be alive today – and countless loved ones would not be grieving today – if the policies of these sanctuary jurisdictions were ended.

Not only do these policies endanger the lives of every American; just last May, the Department of Justice Inspector General found that these policies also violate federal law.

The President has rightly said that this disregard for the law must end.  In his executive order, he stated that it is the policy of the executive branch to ensure that states and cities comply with all federal laws, including our immigration laws.

The order also states that "the Attorney General and the Secretary [of Homeland Security] . . . shall ensure that jurisdictions that willfully refuse to comply" with the law "are not eligible to receive Federal grants, except as deemed necessary for law enforcement purposes by the Attorney General or the Secretary."

Today I am urging all states and local jurisdictions to comply with all federal laws, including 8 U.S.C. Section 1373.  Moreover, the Department of Justice will require jurisdictions seeking or applying for Department grants to certify compliance with Section 1373 as a condition for receiving these awards.

This policy is entirely consistent with the Department of Justice's Office of Justice Programs (OJP) guidance issued last July under the previous administration.  This guidance requires state and local jurisdictions to comply and certify compliance with Section 1373 in order to be eligible for OJP grants.  It also made clear that failure to remedy violations could result in withholding of grants, termination of grants, and disbarment or ineligibility for future grants.

The Department of Justice will also take all lawful steps to claw-back any funds awarded to a jurisdiction that willfully violates Section 1373.

In the current fiscal year, department's OJP and Community Oriented Policing Services anticipate awarding more than $4.1 billion dollars in grants.

I urge our nation's states and cities to consider carefully the harm they are doing to their citizens by refusing to enforce our immigration laws, and to re-think these policies.  Such policies make their cities and states less safe, and put them at risk of losing valuable federal dollars.

The American people want and deserve a lawful immigration system that keeps us safe and serves our national interest.  This expectation is reasonable, and our government has a duty to meet it. And we will meet it.

---

**Speaker:**
Attorney General Jeff Sessions

**Component(s):**
Office of the Attorney General

*Updated March 31, 2017*

AR-00476



**U.S. Department of Justice**

Office of Justice Programs

*Office of the Assistant Attorney General*

*Washington, D.C. 20531*

April 21, 2017

Kathleen Howard
Executive Director
California Board of State and Community Corrections
2590 Venture Oaks Way, Ste. 200
Sacramento, CA 95833

Dear Executive Director Howard,

     I write to alert you that under the terms of your FY 2016 Byrne JAG grant, award 2016-DJ-BX-0446 from the Office of Justice Programs ("OJP"), your jurisdiction is required to submit documentation to OJP that validates that your jurisdiction is in compliance with 8 U.S.C. § 1373, which states that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." As your grant agreement makes clear, this documentation must be accompanied by an official legal opinion from counsel that adequately supports the validation and must be submitted to OJP no later than June 30, 2017. Failure to comply with this condition could result in the withholding of grant funds, suspension or termination of the grant, ineligibility for future OJP grants or subgrants, or other action, as appropriate. If you have any questions regarding this requirement, please contact your grant manager as soon as possible.

Sincerely,

Alan R. Hanson
Acting Assistant Attorney General
Office of Justice Programs

AR-00477



**U.S. Department of Justice**

Office of Justice Programs

*Office of the Assistant Attorney General*

_____

*Washington, D.C. 20531*

April 21, 2017

Eddie T. Johnson
Chicago Superintendent of Police
3510 S Michigan Avenue
Chicago, IL  60653-1020

Dear Superintendent Johnson,

    I write to alert you that under the terms of your FY 2016 Byrne JAG grant, award 2016-
DJ-BX-0106 from the Office of Justice Programs ("OJP"), your jurisdiction is required to submit
documentation to OJP that validates that your jurisdiction is in compliance with 8 U.S.C. § 1373,
which states that "a Federal, State, or local government entity or official may not prohibit, or in
any way restrict, any government entity or official from sending to, or receiving from, the
Immigration and Naturalization Service information regarding the citizenship or immigration
status, lawful or unlawful, of any individual."  As your grant agreement makes clear, this
documentation must be accompanied by an official legal opinion from counsel that adequately
supports the validation and must be submitted to OJP no later than June 30, 2017.  Failure to
comply with this condition could result in the withholding of grant funds, suspension or
termination of the grant, ineligibility for future OJP grants or subgrants, or other action, as
appropriate.  If you have any questions regarding this requirement, please contact your grant
manager as soon as possible.

                                   Sincerely,

                                   *Alan R. Hanson*

                                   Alan R. Hanson
                                   Acting Assistant Attorney General
                                   Office of Justice Programs



**U.S. Department of Justice**

Office of Justice Programs

*Office of the Assistant Attorney General*

*Washington, D.C. 20531*

April 21, 2017

Mayor Mitchell Landrieu
City of New Orleans
Criminal Justice Coordination
1300 Perdido Street, Room 8E15
New Orleans, LA   70112-2112

Dear Mayor Landrieu,

     I write to alert you that under the terms of your FY 2016 Byrne JAG grant, award 2016-DJ-BX-0251 from the Office of Justice Programs ("OJP"), your jurisdiction is required to submit documentation to OJP that validates that your jurisdiction is in compliance with 8 U.S.C. § 1373, which states that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." As your grant agreement makes clear, this documentation must be accompanied by an official legal opinion from counsel that adequately supports the validation and must be submitted to OJP no later than June 30, 2017. Failure to comply with this condition could result in the withholding of grant funds, suspension or termination of the grant, ineligibility for future OJP grants or subgrants, or other action, as appropriate. If you have any questions regarding this requirement, please contact your grant manager as soon as possible.

Sincerely,

Alan R. Hanson
Acting Assistant Attorney General
Office of Justice Programs



**U.S. Department of Justice**

Office of Justice Programs

*Office of the Assistant Attorney General*

*Washington, D.C. 20531*

April 21, 2017

Mayor Jim Kenney
City of Philadelphia
1401 JFK Blvd., Room 1430
Philadelphia, PA 19102-1687

Dear Mayor Kenney,

I write to alert you that under the terms of your FY 2016 Byrne JAG grant, award 2016-DJ-BX-0949 from the Office of Justice Programs ("OJP"), your jurisdiction is required to submit documentation to OJP that validates that your jurisdiction is in compliance with 8 U.S.C. § 1373, which states that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." As your grant agreement makes clear, this documentation must be accompanied by an official legal opinion from counsel that adequately supports the validation and must be submitted to OJP no later than June 30, 2017. Failure to comply with this condition could result in the withholding of grant funds, suspension or termination of the grant, ineligibility for future OJP grants or subgrants, or other action, as appropriate. If you have any questions regarding this requirement, please contact your grant manager as soon as possible.

Sincerely,

Alan R. Hanson
Acting Assistant Attorney General
Office of Justice Programs

AR-00480



**U.S. Department of Justice**

Office of Justice Programs

*Office of the Assistant Attorney General*

*Washington, D.C. 20531*

April 21, 2017

Yolanda King
County Manager
Finance-Community Resource Management
500 S. Grand Central Parkway
5th Floor
Las Vegas, NV  89155-1212

Dear County Manager King,

I write to alert you that under the terms of your FY 2016 Byrne JAG grant, award 2016-DJ-BX-0412 from the Office of Justice Programs ("OJP"), your jurisdiction is required to submit documentation to OJP that validates that your jurisdiction is in compliance with 8 U.S.C. § 1373, which states that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." As your grant agreement makes clear, this documentation must be accompanied by an official legal opinion from counsel that adequately supports the validation and must be submitted to OJP no later than June 30, 2017. Failure to comply with this condition could result in the withholding of grant funds, suspension or termination of the grant, ineligibility for future OJP grants or subgrants, or other action, as appropriate. If you have any questions regarding this requirement, please contact your grant manager as soon as possible.

Sincerely,

Alan R. Hanson
Acting Assistant Attorney General
Office of Justice Programs

AR-00481



**U.S. Department of Justice**

Office of Justice Programs

*Office of the Assistant Attorney General*

*Washington, D.C. 20531*

April 21, 2017

Mayor Carlos A. Giminez
Miami Dade County
Miami Dade Police Department
9105 N.W. 25th Street
Miami, FL 33172-1500

Dear Mayor Giminez,

     I write to alert you that under the terms of your FY 2016 Byrne JAG grant, award 2016-DJ-BX-0578 from the Office of Justice Programs ("OJP"), your jurisdiction is required to submit documentation to OJP that validates that your jurisdiction is in compliance with 8 U.S.C. § 1373, which states that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." As your grant agreement makes clear, this documentation must be accompanied by an official legal opinion from counsel that adequately supports the validation and must be submitted to OJP no later than June 30, 2017. Failure to comply with this condition could result in the withholding of grant funds, suspension or termination of the grant, ineligibility for future OJP grants or subgrants, or other action, as appropriate. If you have any questions regarding this requirement, please contact your grant manager as soon as possible.

Sincerely,

Alan R. Hanson
Acting Assistant Attorney General
Office of Justice Programs

AR-00482



**U.S. Department of Justice**

Office of Justice Programs

*Office of the Assistant Attorney General*

*Washington, D.C. 20531*

April 21, 2017

Christopher Abele
County Executive
Milwaukee County
901 N. 9th Street
Milwaukee, WI 53233-1427

Dear County Executive Abele,

I write to alert you that under the terms of your FY 2016 Byrne JAG grant, award 2016-DJ-BX-1013 from the Office of Justice Programs ("OJP"), your jurisdiction is required to submit documentation to OJP that validates that your jurisdiction is in compliance with 8 U.S.C. § 1373, which states that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." As your grant agreement makes clear, this documentation must be accompanied by an official legal opinion from counsel that adequately supports the validation and must be submitted to OJP no later than June 30, 2017. Failure to comply with this condition could result in the withholding of grant funds, suspension or termination of the grant, ineligibility for future OJP grants or subgrants, or other action, as appropriate. If you have any questions regarding this requirement, please contact your grant manager as soon as possible.

Sincerely,

Alan R. Hanson
Acting Assistant Attorney General
Office of Justice Programs

AR-00483



**U.S. Department of Justice**

Office of Justice Programs

*Office of the Assistant Attorney General*

*Washington, D.C. 20531*

April 21, 2017

Elizabeth Glazer
Director
New York City Mayor's Office of Criminal Justice
1 Centre Street, Room 1012N
New York, NY 10007-1602

Dear Director Glazer,

I write to alert you that under the terms of your FY 2016 Byrne JAG grant, award 2016-DJ-BX-0178 from the Office of Justice Programs ("OJP"), your jurisdiction is required to submit documentation to OJP that validates that your jurisdiction is in compliance with 8 U.S.C. § 1373, which states that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." As your grant agreement makes clear, this documentation must be accompanied by an official legal opinion from counsel that adequately supports the validation and must be submitted to OJP no later than June 30, 2017. Failure to comply with this condition could result in the withholding of grant funds, suspension or termination of the grant, ineligibility for future OJP grants or subgrants, or other action, as appropriate. If you have any questions regarding this requirement, please contact your grant manager as soon as possible.

Sincerely,

Alan R. Hanson
Acting Assistant Attorney General
Office of Justice Programs

AR-00484