## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATES OF NEW YORK, CONNECTICUT, NEW JERSEY, RHODE ISLAND and WASHINGTON, and COMMONWEALTHS OF MASSACHUSETTS and VIRGINIA, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE; and JEFFERSON B. SESSIONS III, in his official capacity as Attorney General of the United States, <br><br> Defendants. | No. 18-cv-6471 (ER) |
| CITY OF NEW YORK <br><br> Plaintiff, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, in his official capacity as Attorney General of the United States of America, and the UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendants. | No. 18-cv-6474 (ER) |

## DECLARATION OF

## CHIEF PRIVACY OFFICER, CITY OF NEW YORK

I, Laura Negrón, declare as follows:

1.      I am the Chief Privacy Officer of the City of New York ("City"). In this capacity,

my responsibilities include enhancing and coordinating responsible citywide data-sharing practices; improving how the City uses data to inform responsible and equitable policies; developing and adopting citywide protocols relating to the protection of individually identifiable information; and providing guidance to City agencies on matters within my purview. I am familiar with the City's laws and policies relating to the collection, retention, and disclosure of sensitive, confidential, and other types of identifying information.

      2.     I have served in my current position since March 15, 2018. Prior to that time, I was General Counsel and Chief Privacy Officer for the Mayor's Office of Operations, where I have served since 2014. In the latter capacity, I developed and helped implement a citywide data integration framework that enables City agencies to exchange data, in accordance with applicable law, to achieve key multiagency initiatives that benefit New Yorkers, such as those which help facilitate enrollment in early childhood education programs, health insurance, and supportive housing, among others. My public interest career, as a whole, spans nearly forty years and encompasses various executive and leadership positions serving City residents.

**The City's Generally Applicable Information Laws and Policies**

      3.     Over decades, the City has developed various laws and policies to protect the personal information of the people who work, live and visit the City, including the General Confidentiality Policy and the Identifying Information Law in effect today.

**A. The General Confidentiality Policy**

      4.     In 2001, voters recognized that to perform its legitimate municipal functions, the City needed a general confidentiality policy to protect information obtained and collected by City employees. Voters enacted a revision to the New York City Charter authorizing the Mayor to "promulgate rules requiring that information obtained by city employees be kept confidential to the extent necessary to preserve the trust of individuals who have business with city agencies." N.Y.C. Charter § 8(g).

      5.     Then-Mayor Michael R. Bloomberg acted on this Charter revision in 2003 by issuing Executive Orders Nos. 34 and 41 of 2003, which together form the "General

Confidentiality Policy". True and correct copies of Executive Orders Nos. 34 and 41 are attached hereto as Exhibits A and B, respectively. Upon issuing the General Confidentiality Policy, then-Mayor R. Bloomberg formally repealed Executive Order No. 124 of 1989, which had prohibited any City officer or employee from transmitting information regarding any immigrant to federal immigration authorities, except in limited circumstances.  Exec. Order No. 34 § 1.  A true and correct copy of Executive Order No. 124 of 1989 is attached hereto as Exhibit C.

6.      The City's General Confidentiality Policy, in effect since 2003, generally bars City employees from affirmatively seeking "confidential information" from individuals in the first instance.  If confidential information is nevertheless acquired from a member of the public, the General Confidentiality Policy bars City employees from disclosing it to third parties, with limited exceptions.

7.      Under the General Confidential Policy, confidential information is broadly defined to include an individual's sexual orientation, status as a victim of domestic violence, status as a victim of sexual assault, status as a crime witness, receipt of public assistance, immigration status, and information contained in income tax records.  *Id.*

8.      Relevant here, the General Confidentiality Policy, *inter alia,* restricts when City officers and employees may inquire about a person's immigration status.  *Id.* § 4.  Specifically, it provides that law enforcement officers "shall not inquire about a person's immigration status unless investigating illegal activity other than mere status as an undocumented alien."  *Id.* § 4(a).

9.      This policy also prohibits law enforcement officers from inquiring "about the immigration status of crime victims, witnesses, or others who call or approach the police seeking assistance."  *Id.* § 4(c).

10.     In the event that officers and employees come into possession of confidential information, the General Confidentiality Policy limits disclosure of such information to the following situations: (1) disclosure has been authorized in writing by the individual to whom such information pertains; (2) disclosure is required by law; (3) disclosure is to another City officer or employee and is necessary to fulfill the purpose or achieve the mission of any City

agency; (4) for confidential information other than information related to immigration status, disclosure is to a third party and is necessary to fulfill the purpose or achieve the mission of any City agency; or (5) for information relating to immigration status, (a) the individual to whom such information pertains is suspected of engaging in illegal activity, (b) the information is necessary to apprehend someone suspected of engaging in illegal activity, or (c) disclosure is necessary in furtherance of an investigation of potential terrorist activity. *Id.* § 2.

11.    Under the General Confidentiality Policy, "illegal activity" is defined as unlawful activity, other than "mere status as an undocumented alien." *Id*. § 3.

12.    The overarching goals of the General Confidentiality Policy include assuring residents "that they may seek and obtain the assistance of City agencies regardless of personal or private attributes, without negative consequences to their personal lives" and ensuring that the City's work will not be impeded by privacy concerns. *Id.* As Executive Order 41 explains, "the obtaining of pertinent information, which is essential to the performance of a wide variety of government functions, may in some cases be difficult or impossible if some expectation of confidentiality is not preserved, and preserving confidentiality in turn requires that governments regulate the use of such information by their employees." *Id.*

**B. Identifying Information Law**

13.    In December 2017, the City substantially augmented confidentiality protections set forth in the New York City Charter and New York City Administrative Code to further protect the privacy of the vast scope of sensitive, personal information collected by the City, and the non-government agencies with which it contracts to provide human services. *See* N.Y.C. Charter § 8(h); N.Y.C. Admin. Code §§ 23-1201 – 1205 (collectively, the "Identifying Information Law"). True and correct copies of N.Y.C. Charter § 8(h), and N.Y.C. Admin. Code §§ 23-1201 – 1205 are attached here to as Exhibit D and E, respectively.

14.    The Identifying Information Law, which became effective June 15, 2018, sets forth a uniform, citywide framework that governs the collection, disclosure, and retention of any information that "may be used on its own or with other information to identify or locate an

individual." N.Y.C. Admin. Code § 23-1201.

15.     The Identifying Information Law requires the City to designate a Chief Privacy Officer for the City and an agency specific privacy officer for each City agency.  N.Y.C. Charter § 8(h); N.Y.C. Admin. Code § 23-1201.  The Mayor designated me as the City's Chief Privacy Officer on March 15, 2018.

16.     Under the Identifying Information Law, "identifying information" is very broadly defined, and includes but is not limited to an individual's "name, sexual orientation, gender identity, race, marital or partnership status, status as a victim of domestic violence or sexual assault, status as a crime victim or witness, citizenship or immigration status, eligibility for or receipt of public assistance or city services, all information obtained from an individual's income tax records, information obtained from any surveillance system operated by, for the benefit of, or at the direction of the police department, motor vehicle information or license plate number, biometrics such as fingerprints and photographs, languages spoken, religion, nationality, country of origin, place of birth, arrest record or criminal conviction, employment status, employer information, current and previous home and work addresses, contact information such as phone number and email address, information concerning social media accounts, date and/or time of release from the custody of the administration for children's services, the department of correction, or the police department, any scheduled court appearances, or any scheduled appointments with any employee, contractor, or subcontractor."  *Id*. The Chief Privacy Officer may designate additional types of identifying information.  *Id*.  To date, as Chief Privacy Officer, I have designated an individual's social security number and date of birth as enumerated types of identifying information.

17.     In general, the Identifying Information Law prohibits City employees from collecting or disclosing identifying information to any party outside such employee's agency, including an employee of another City agency, unless one of the limited exceptions applies: (1) exigent circumstances exist; (2) the agency privacy officer pre-approves the collection or disclosure as "routine", meaning that the collection or disclosure is made during the normal

course of agency business and furthers the purpose or mission of the agency; (3) agency privacy officers from different City agencies each agree that the collection or disclosure between their respective agencies is routine; (4) the agency privacy officer approves the collection or disclosure, in writing, on a case-by-case basis, and the collection or disclosure furthers the purpose or mission of the agency or is required by law; (5) the City's Chief Privacy Officer determines in advance that the collection or the disclosure to another City agency is in the best interests of the City; or (6) the individual to whom the identifying information pertains—or, where the individual lacks capacity, a parent or legal representative—provides written authorization for disclosure of the identifying information. *Id.* §§ 23-1201, 23-1202(b)(1), 23-1202(b)(2)(a) and (b), 23-1202(c)(1), 23-1202(c)(2).

18.    An additional exception to the Identifying Information Law's restrictions on the collection and disclosure of identifying information applies to investigations. Specifically, the Identifying Information Law allows the police department to collect and disclose identifying information in connection with the investigation of a crime or an attempted or impending crime. Collection or disclosure of identifying information is also permitted by a City agency in connection with an open investigation concerning the welfare of a minor or individual who is otherwise not legally competent. *Id.* §§ 23-1202(b)(2)(c), 23-1202(c)(2)(c).

19.    Unauthorized disclosures of identifying information and collections and disclosures made under exigent circumstances must be reported to me as the City's Chief Privacy Officer and, in certain circumstances, reasonable efforts must be made as soon as practicable to notify in writing the individual whose identifying information was disclosed and to whom it was disclosed. *Id.* § 23-1202(c)(4).

**Mayor's Office of Information Privacy and Citywide Privacy Protection Committee**

20.    Further evidencing the City's commitment to protecting the privacy of New Yorkers' personal information, in April 2018 the Mayor issued Executive Order No. 34 of 2018. This Executive Order established the Office of Information Privacy, headed by the Chief Privacy Officer, to coordinate a centralized privacy protection function citywide and strengthen privacy

best practices, as well as a citywide privacy protection committee—also within the Office of the Mayor—comprised of City agency representatives having relevant subject matter expertise necessary to advise on and generally support the development of citywide privacy protection policies and protocols and best practices. A true and correct copy of Executive Order No. 34 of 2018 is attached hereto as Exhibit F.

### Importance of the City's Generally Applicable Information Laws and Policies

21.     As the City's Chief Privacy Officer and head of the Mayor's Office of Information Privacy, I am keenly aware of the critical importance of the City's generally applicable privacy laws and policies to the people of the City and to the City's work, especially as City agencies exchange data to advance multiagency priority initiatives and interagency coordination to benefit New Yorkers.

22.     The City is home to over 8.5 million people, more than 3 million of whom were born outside of the United States but have chosen to work, study, and raise families in the City. Over half a million more people travel to the City every day to work, and 50 million tourists visit every year. The City has the enormous responsibility of protecting the health, safety, and general welfare of all of these people, and facilitating equal access to needed services across its diverse populations and communities.

23.     As a practical matter, the City and its populace benefit when residents seek treatment and medical attention for contagious diseases, report crime when they are victims, assist the police as witnesses, and come forward when they have information about potential crimes, unsafe conditions, or other threats to public safety and welfare. The existence of the City's General Confidentiality Policy and Identifying Information Law, together with the Mayor's Office of Information Privacy, encourage City residents and visitors to take these important steps which benefit everyone because they can trust that the City will appropriately and responsibly protect their personal information.

24.     The City employs hundreds of thousands of people. The City needs uniform laws and policies to ensure that the information that all City employees and officials collect, maintain

and disclose every day is handled properly, consistently, and in the best interests of the City and its people.  It is thus essential that the City – as an employer and as a municipal government – controls how its employees handle identifying information gained through their official functions as public servants, particularly sensitive and confidential information. The City cannot allow City agencies or individual employees to make *ad hoc* decisions about how to handle confidential or identifying information.   The General Confidentiality Policy, Identifying Information Law, and Mayor's Office of Information Privacy collectively provide the legal and operational framework that agencies and their employees need in order to responsibly perform their jobs, while ensuring that identifying information that City employees collect, disclose, and maintain is consistently protected and utilized for the best interests of its residents and the City as a whole.

25.    The City's privacy laws and policies, as a whole, equally safeguard <u>all</u> New Yorkers' identifying information to the greatest extent permitted by law.  Allowing City officials and employees to act as federal informants by disclosing identifying information relating to immigration status alone not only contravenes the City's generalized privacy framework, but also prompts confusion at the City's myriad agencies as their employees struggle to reconcile differing standards for protecting residents' personal information and, importantly, will betray residents' trust and confidence in their City's government. Such disclosures will ultimately have a chilling effect upon many vulnerable residents' ability to access necessary health, safety, and other services for fear that their personal information may be used for purposes that may bring harm to themselves and their loved ones.

I declare under penalty of perjury under the laws of the State of New York and the United States that the foregoing is true and correct to the best of my knowledge and that this declaration was executed on August 16, 2018, in ___New York___, New York.

Laura Negrón, Esq.
Chief Privacy Officer, City of New York